UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MALOTT,

    Plaintiff,

v.

UNKNOWN HILL, *et al.*,

    Defendants.
_____/

Case No. 1:15-cv-1092

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Aron, Baker, Biddle, Black, Bladzak, Briske, Farago, Guzikowski, Hill, Homrich, Kopfman, McKlindon [sic], Mitchell, Riggs, Schreiber, Thomas, and Yount (ECF No. 88).

    **I.**    **Plaintiff's claims**

Plaintiff alleged that between October 2, 2015 and October 7, 2015, while he was incarcerated at the Oaks Correctional Facility (ECF), defendants engaged in retaliation by taunting, threatening, and assaulted him. The Court previously dismissed defendants Warden Thomas Mackie, MDOC Director Heidi Washington and Corrections Officer (CO) Dunn. The following defendants remain in this action: Sgt. Hill; Sgt. Yount; Sgt. Baker; Sgt. Mitchell; Sgt. Biddle; Lt. McKlindon [McLinden]; Lt. Schreiber; Lt. Riggs; Resident Unit Manager (RUM) Thomas; RN Briske; CO Aron; CO Kopfman; CO Bladzak; CO Black; CO Guzikowski; CO Homrich; and CO

1

Farago. Plaintiff listed the following alleged acts of retaliation by the remaining defendants committed in both their personal and official capacities (in his words).[1]

    **A.**    **October 2, 2015**

    1.    RUM Thomas came to cell door (5-225) several times to taunt and threaten me. Said he already told staff to have me on "T.O.B." [top of bed restraints] this weekend and torture me.

    2.    Sgt Biddle and Lt McKlindon [sic] came to door, and illegally put me in restraints by claiming I was violating rules – they said they had me now, they'll teach me a lesson.

    3.    C/O Guzikowski & C/O Black placed hairs into my lunch tray.

    4.    C/O Homrich spit in my food.

    5.    My toilet overflowed and nothing was done, I was left in toilet water all night long – for 2 ½ shifts. (C/O Powell [not a party to this suit], Homrich, Farago, Lt Riggs, Lt Schreiber).

Compl. at PageID.6.

    **B.**    **October 3, 2015**

    1.    Assaulted by Sgt. Baker, C/O Black and C/O Bladzak, (unknown C/O). I was punched, hit repeatedly. C/O Black stepped on my fingers. C/O Black put my property into the toilet water on my floor on purpose.

    2.    I overdosed on several pills and was put on suicide watch for it, but RN Briske never gave me no med attention. No hospital, or stomach pump. She left me in pain all day long.

    3.    C/O Guzikowski and C/O Black refused my breakfast.

---

[1] Plaintiff's complaint is not divided into counts. The Court listed numbered paragraphs in § I to identify the separate claims.

    4.     C/O Guzikowski and C/O Black spit and put pubic hairs in my lunch tray.

    5.     RN Briske denied me my mental health medications.

    6.     Prior to being placed in TOB restraints, C/O's Kopfman, Aron, Baldzak, Black & Guzikowski told me they were going to lie to have me put in them, say I did something wrong I never did.

    7.     C/O's Aron and Bladzak entered my cell while I was in "TOB" restraints w/out a camera.  C/O Aron pinched my nose and held a cloth over my mouth so I couldn['t] breathe.  I was then punched in my face, stomach, and private parts several times by them.

    8.     On 1st, 2nd, & 3rd shift I was taunted, teased, and had my life threatened by C/O's Farago, Homrich, Black, Guzikowski, Kopfman, Bladzak, Lt McKlindon [sic], Lt Schreiber, Lt Riggs, Sgt Baker, Sgt Hill, Sgt Mitchell, and others while I was in "TOB["] restraints/ Compl. at PageID.6-7.

    **C.**     **October 4, 2015**

    1.     I was made to promise I would[n't] file no grievances prior to being left off the bed.  Compl. at PageID.7.

    **D.**     **October 5, 2015**

    1.     On the way to a phone conference w/Atty General, and federal judge Sgt Biddle, Sgt Yount, RUM Thomas, C/Os Guzikowski & Black threatened to kill me, spit in food again and throw away my property if I "snitched" on them, or if I wrote any grievances on them for what they did to me.  Compl. at PageID.7.

    **E.**     **October 6, 2015**

3

      1.      On the way to another conference call, Sgt Baker, & C/O Kopfman threatened to kill me and tell everyone I['m] a snitch if I write a grievance on them for what they did to me.

      2.      C/O's Farago & Bladzak came into my cell and damages my property & legal papers. C/O Farago spit in my food. Compl. at PageID.7-8.

      **F.**      **October 7, 2015**

      1.      C/O's Kopfman & Aron again threatened me not to file grievances on them for what they did to me. They also yelled out my families [sic] address on the Rock, and told everyone I was a snitch, then spit in my food trays. Compl. at PageID.8.

      **III.**      **Defendants' motion for summary judgment**

      **A.**      **Legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's lawsuit alleged multiple claims of retaliation against defendants. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there

is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action against plaintiff." *Eckerman v. Tennessee Department of Safety*, 636 F.3d 202, 208 (6th Cir. 2010).

      **C.**      **Defendants' motion**

      **1.**      **Elements of retaliation**

Plaintiff alleged that defendants engaged in multiple acts of misconduct during early October 2015. While plaintiff characterized these acts as retaliation in violation of his First Amendment rights, he did not identify the particular protected conduct that led to the alleged retaliation, other than stating that former defendant Warden Mackie "allowed this stuff to occur to me, even after notified and complained about" and that former defendant MDOC Director Washington "failed to intervene after I notified her." Compl. at PageID.9.

During initial screening, the Court stated that plaintiff alleged that the ECF staff acted "in retaliation for Plaintiff's grievances and lawsuit." Opinion (ECF No. 7, PageID.49). The lawsuit mentioned in the opinion was *Malott v. Marshall*, 2:12-cv-405 (W.D. Mich.), which involved an alleged stabbing at the Marquette Branch Prison (sometimes referred to as "the MBP lawsuit"), which plaintiff settled on October 5, 2015. *See id.*; *Malott v. Marshall*, 2:12-cv-405 (Stipulation and Order of Dismissal) (Oct. 5, 2015) (ECF No. 148). The undersigned notes that plaintiff's complaint did not identify the MBP lawsuit as the "protected conduct" for purposes of his First Amendment claim; the complaint only referenced a conference call with the attorney general's office and a federal judge on October 5th (the date the lawsuit settled) and "another

6

conference call." Nevertheless, defendants do not contest that plaintiff met the first element of the retaliation claim, stating:

> Plaintiff suggests that he was placed in restraints and received threats in retaliation for the grievances and litigation against officials at the Marquette Branch Prison who had failed to protect him from a gang assault.
>
> Defendants deny that any grievances that Plaintiff may have filed had any effect on the determination to place Plaintiff in restraints. Instead, Plaintiff was placed in restraints as described above, because of his attempt to commit suicide and refusal to stay in his current restraints.

Defendants' Brief (ECF No. 89, PageID.291).

To prevail on their summary judgment motion, defendants carry the burden of showing that there is an absence of evidence to support plaintiff's claims. *Celotex Corp.*, 477 U.S. at 324-325. As discussed, defendants do not contest the first element of plaintiff's retaliation claim. Defendants' position appears to be that either no "adverse actions" occurred, or, to the extent they took adverse actions against plaintiff, there was no causal connection between those actions and his protected conduct. Defendants' motion and brief address only a few of plaintiff's claims with a limited amount of supporting evidence. Defendants' motion is focused on some allegations of food tampering and plaintiff's allegation that defendants retaliated against plaintiff by placing him in TOB restraints on October 3, 2015. With respect to the restraints, defendants point out that "[p]laintiff leaps to the conclusion that the grievance he filed was the reason for him being placed in restraints, assaulted, taunted and threatened, however has plead no evidence to support those claims." Defendants' Brief (ECF No. 89, PageID.292). While it is true that plaintiff presented *no evidence* to support the allegations set forth in his complaint, defendants' motion is so limited in scope that nearly all of plaintiff's claims survive. For the reasons discussed below, the Court concludes that all of plaintiff's claims should proceed to trial except those set forth in §§ I.A.3, I.A.4., and I.B.6, *supra*.

### 2. Food tampering

#### a. October 2, 2015

Defendants contend that the alleged adverse action of food tampering by CO Guzikowski, CO Black and CO Homrich on October 2, 2015, did not occur. During his deposition, plaintiff testified that there were hairs in his tray but that he did not see anyone put the hairs there. Malott Dep. at PageID.302. Nevertheless, plaintiff testified that CO Guzikowski and CO Black admitted to the act, by making comments like "I hope you like your lunch". *Id*. Plaintiff stated that CO Guzikowski "gave me a little wink like he always used to do, and I knew something was wrong." *Id*. Plaintiff also testified that CO Black, whom plaintiff referred to as "an extremely playful person" told him that it was pubic hair. *Id*. at PageID.302-303. Plaintiff's testimony did not establish that either CO Guzikowski or CO Black tampered with his food on October 2nd. In addition, plaintiff would not answer counsel's questions regarding his claim that CO Homrich also spit in his food. *Id*. at PageID.303-304. Accordingly, CO's Guzikowski, Black and Homrich should be granted summary judgment with respect to these claims alleged in § I.A.3 and 4, *supra*.[2]

#### b. Food tampering by Sgt. Yount, Sgt. Baker, and CO Black

Defendants Sgt. Yount, Sgt. Baker, and CO Black executed affidavits stated that they "did not spit or threaten to spit in Plaintiff's food or place hair in Plaintiff's food in retaliation for filing any complaint against any individual employed at Oaks Correctional Facility [ECF]." Yount Aff. (ECF No. 89-3, PageID.308); Baker Aff. (ECF No. 89-6, PageID.354); Black Aff. (ECF No. 89-5, PageID.351). These affidavits beg the question of whether plaintiff's retaliation

---

[2] Defendants point out that during his deposition, plaintiff expressed an intent to dismiss defendant Homrich, stating "I would like to say one thing about Officer Homrich. I would actually like to dismiss him from this lawsuit, I don't know if that's possible." Malott Dep. (ECF No. 89-1, PageID.304). Plaintiff also testified that "I don't want to pursue him in this." *Id*. Plaintiff's expressed desire to dismiss defendant Homrich does not operate as a dismissal of those claims. If plaintiff wants to dismiss Homrich, then he needs to file a motion to voluntarily dismiss him from this suit.

claim was based on the MBP lawsuit. Based on the meager record before the Court, and the limitation expressed in the affidavits, the Court concludes that genuine issues of material fact exist with respect whether defendants' Yount, Baker, or Black engaged in food tampering in retaliation for plaintiff's filing the MBP lawsuit. Accordingly, their motion for summary judgment related to food tampering should be denied.

### 3. The events of October 3, 2015

Defendants have filed affidavits, copies of reports, and a video related to plaintiff's cell extraction, shower extraction, and placement in restraints on October 3, 2015. *See* Yount Aff. (ECF No. 89-3); Reports (ECF No. 89-4); Baker Aff. (ECF No. 89-6); Video (ECF No. 92). Defendants exerted little effort to address plaintiff's claims in their brief, other than to invite the Court to review the exhibits and watch the video tape of the incident. The Court has done both. These exhibits are germane to one claim, i.e., that prior to being placed in TOB restraints, CO Kopfman, CO Aron, CO Bladzak, CO Black and CO Guzikowski told plaintiff that they were going to have him placed in restraints for false reasons. The Court will address this claim.

Defendant Lt. Mclinden filed a critical incident report which summarized the events of October 3, 2015:

> On 10-3-15 prisoner Malott 467434 slipped his in-cell standing hard restraints and attempted to ingest a large amount of pills. Sergeant Baker had instructed staff to enter the cell to restrain prisoner Malott preventing prisoner Malott from harming himself. Prisoner Malott was removed from the cell and placed in the Housing Unit Five a-lower shower. At 1034 Sergeant Yount assembled a restraint team consisting of Officer Dunn Upper Body, Aron Lower Body, Bladzik Shield, Black Camera, and Sergeant Baker ECD. Officer Dunn had to instruct prisoner Malott multiple times to comply with a strip search. When prisoner Malott complied with the strip search[,] Officer Dunn applied the belly chains, and Officer Aron applied the leg irons.
>
> The squad escorted prisoner Malott to 5-225 and instructed prisoner Malott to lie down and be restrained in the five-point top of bed soft restraints. Officer Dunn and Officer Aron applied the upper body restraints, then applied the Lower

9

[sic] body restraints and then applied the chest restraint.  Nurse Briske checked the restraints and found them to be applied correctly and they were not restricting breathing.

No force was used, prisoner Malott complied with all orders.

At 1445 prisoner Malott #467434 (5-225) manipulated his restraints by moving his chest strap down.  Lt. Schreiber contacted Warden Mackie who authorized the use of the safety net.  At 1516 a restraint team consisting of Sergeant Hill, Sergeant Mitchell, Officer Farago, Officer Schroeder, Officer Aron, and Officer Gainer went to the cell and placed prisoner Malott into the safety net. Prisoner Malott did not resist staff's attempts to place him in the safety net.

RN Briske conducted a restraint check, finding no discomfort or impaired circulation.  Staff exited the cell without further incident.

A review of the incident shows that staff used the appropriate use of force for this incident.

Critical Incident Report (ECF No. 89-4, PageID.311, 313.

Sgt. Yount supervised the team responsible for placing plaintiff in restraints.  *See* Yount Aff. (ECF No. 89-3, PageID.308).  Yount stated: that plaintiff slipped his in-cell hard restraints; that plaintiff attempted to ingest a large number of pills; that plaintiff's cell was partially flooded with sewage and toilet water due to plaintiff clogging the toilet in his cell; that staff removed plaintiff and placed him in the 5-block shower; that at 1034 he assembled a restraint team to remove plaintiff from the shower and place him in 5-point top of bed soft restraints in his cell; that CO's Dunn and Aron applied the restraints; and that RN Briske evaluated the restraints once administered.  *Id*.

Sgt. Baker was the taser operator of the team tasked with placing plaintiff in restraints.  *See* Baker Aff. (ECF No. 89-6, PageID.354).  Baker stated that plaintiff slipped out of his in-cell restraints, attempted to ingest a large number of pills to commit suicide, and was removed to the shower.  *Id*. His team was tasked with removing plaintiff from the shower and placing him in the TOB restraints in his cell.  *Id*.  Baker observed CO's Dunn and Aron applying

10

the restraints, and RN Briske evaluating the restraints after they were applied.  *Id*.

This undisputed record supports defendants' contention that they removed plaintiff from his cell and later placed him in top of bed restraints because he slipped out of his hard restraints, flooded his cell, and attempted to commit suicide.  There is no evidence that this was retaliatory conduct motivated by plaintiff's grievances or the MBP lawsuit.  The video depicts the uneventful extraction of an inmate from a flooded cell, placement in a shower, extraction from a shower, and placement in restraints as described in the reports and affidavits (ECF No. 92). Accordingly, defendants CO's Kopfman, Aron, Bladzak, Black, and Guzikowski should be granted summary judgment with respect to plaintiff's claim that they retaliated against him by placing him in restraints on October 3, 2015 alleged in § I.B.6, *supra*.

### 4. Threats to plaintiff

Defendants Sgt. Yount, Sgt. Baker and CO Black executed affidavits in which they denied making threats to kill or assault plaintiff in retaliation for filing complaints against any individual employed at Oaks Correctional Facility.  *See* Yount Aff. at PageID.308; Baker Aff. at PageID.354; Black Aff. at PageID.350.  For the reasons discussed in § III.C.2.b., these affidavits, do not address plaintiff's claim that defendants engaged in this conduct in retaliation for plaintiff filing the MBP lawsuit.   Accordingly, their motion for summary judgment related to threatening plaintiff should be denied.

### 5. Official capacity claims

Defendants seek summary judgment with respect to plaintiff's "official capacity" claims which ask for monetary relief.  Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity.  *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th

Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities").  Accordingly, all defendants are entitled to summary judgment on plaintiff's claims for monetary damages arising from actions performed in their official capacities.

### 6. Qualified immunity

Defendants contend that they are entitled to qualified immunity.  *See* Defendants' Brief at PageID.294-295.  However, defendants' brief consists of nothing but the recitation of legal standards. *Id*. Accordingly, this claim should be denied.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 88) be **GRANTED** with respect to the following:

A. Plaintiff's claim that defendants Guzikowski, Black and Homrich retaliated against plaintiff by tampering with his food on October 2, 2015 (§ I.A.3 and 4);

B. Plaintiff's claim that defendants Kopfman, Aron, Bladzak, Black, and Guzikowski retaliated against plaintiff by placing him in restraints on October 3, 2015 (§ I.B.6); and,

C. Plaintiff's claim for monetary damages against defendants in their official capacities.

I further recommend that defendants' motion be **DENIED** with respect to all other claims.

Dated:  March 6, 2019  /s/ Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).